HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CYNTHIA FAJARDO,

        Plaintiff,

v.

PIERCE COUNTY, a political subdivision of the State of Washington; and PIERCE COUNTY SHERIFF'S DEPARTMENT, a department of Pierce County,

        Defendants.

Case No. C08-5136 RBL

ORDER GRANTING DEFENDANTS' RULE 37 MOTION TO COMPEL

## *I. INTRODUCTION*

THIS MATTER is before the Court upon Defendant Pierce County's Motion to Compel Plaintiff to produce certain medical records and expert-related records. [Dkt. #25]. The Court has considered the pleadings filed in support of and in opposition to the motion and the entire file herein. Plaintiff is ORDERED to produce her unfiltered medical records and all communications with and materials provided to Plaintiff's expert witness Chief Harrington.

## *II. DISCUSSION*

**A. Background**

On March 26, 2009 this Court ordered Plaintiff to cooperate in a psychological examination with an Independent Medical Examiner (IME). [Dkt. #18]. Defendant requested Plaintiff provide the IME physician, Dr. Rosen, with her most recent medical records from her current health care providers. Plaintiff asserted she would provide the County only records related to her "'same condition' not all medical records and not all conditions." [Dkt. #26 at 20].

ORDER

Page - 1

Defendant has also requested disclosure of all documents and communications between Plaintiff and her expert witness, Chief Harrington, that are related to the expert's understanding of the case. Plaintiff seeks to preclude certain of these documents as work product.

Defendant Pierce County moves the Court to compel Plaintiff to produce the additional medical and expert-related records. Plaintiff argues that Defendant has improperly requested the medical records and that the documents requested from Plaintiff's expert are protected by work product.

## B. Plaintiff Shall Provide Unfiltered Medical Records

Plaintiff claims that the Defendant cannot force her to sign forms authorizing her physicians to release her medical records directly to the Defendant. However, Plaintiff's Response offers no factual evidence that Defendant has asked her to do so. [Dkt. #33]. Plaintiff argues that the Defendant may only seek her records through a subpoena or by "serving a request for production for records within the possession of the opposing party." [Dkt. #33 at 7]. Thus, Plaintiff seems to argue that the Motion to Compel is not a proper motion to compel at all; and that the issue "is simply whether a defendant can force the plaintiff to sign medical releases that release her medical records directly to the defendant" without providing Plaintiff the opportunity to review and assert privilege. [Dkt. #33 at 8]. Plaintiff misconstrues the legal application of a motion to compel.

The Defendant's record request asks that Plaintiff "provide updated records of all her medical providers without first screening out those records she deems not related to her 'condition.'" [Dkt. #25 at 6]. Defendant is not asking Plaintiff to allow Defendant to obtain these records "directly." Defendant is simply requesting that Plaintiff disclose her medical records without pre-screening them based on Plaintiff's own assessment of their relevancy or privilege. As such, the issue is not whether Plaintiff need sign the medical release forms, but whether Defendant's Motion to Compel requires Plaintiff to produce all Plaintiff's medical and expert-related records.

### *1. Plaintiff Cannot Withhold Medical Records Based on Patient-Physician Privilege*

Certain allegations of emotional harm can place both a party's mental and physical conditions in controversy, in turn waiving the party's physician-patient privilege. This Court has stated that a valid psychological health assessment such as an IME may require "[c]omplete and accurate information

regarding medical as well as mental health history [which] can be important in not only determining prior functional abilities or impairments, but also evaluating alternative causes of symptoms . . . such as medical conditions, side effects of medication, or substance abuse." *Prue*, 2008 WL 3891466 at *2. Since the Plaintiff's IME physician, Dr. Gerald Rosen, expressed concern that his assessment may be incomplete because "not all records of interest were available for review at the time" [Dkt. #40 at 2], the Court defers to the doctor's medical expertise and orders that these records be disclosed.

Plaintiff nonetheless argues she has not waived her physician-patient privilege as to any medical records not directly pertaining to her current emotional distress, because she only alleges "garden-variety" emotional distress.[1] Yet Plaintiff's physical manifestations of her emotional distress–such as the alleged worsening of her Graves Disease–amount to more than a "garden variety" claim and thus place both her mental and physical condition in controversy.[2]

### *2. Physician-Patient Privilege is Waived as to Patient's Physicians Pursuant to RCW 5.60.060(4)(b)*

There is no federal law regarding physician-patient privilege.[3] Even if the Court were to apply the relevant state statute on privilege, it has already been waived by Plaintiff since she has previously provided medical records without claim of privilege [Dkt. #13 at 5 and 9].[4]

---

[1] "Garden-variety emotional distress has been described . . . as . . . that which is 'simple or usual.' In contrast, emotional distress that is not garden variety 'may be complex, such as that resulting in a specific psychiatric disorder.'" *Fitzgerald v. Cassil*, 216 F.R.D. 632, 637 (N.D. Cal. 2003); citing *Ruhlmann v. Ulster County Dep't of Soc. Servs.,* 194 F.R.D. 445, 449 n. 6 (N.D.N.Y.2000). Courts have held that a plaintiff does not place his/her mental or physical condition in controversy–and therefore waive physician-patient privilege–simply by alleging "garden variety" emotional distress. Something more is required. *Fitzgerald*, 216 F.R.D. at 637; citing *Jackson v. Chubb Corp.*, 193 F.R.D. 216, 226 (D.N.J.2000).

[2] Plaintiff specifically states that "Grave [sic] disease is a medical condition that requires expert diagnosis and analysis to establish a causal connection." [Dkt. #33 at 4]. Thus it is not a garden variety symptom. Whether a significant worsening of Plaintiff's Graves disease was in fact caused by emotional stress is a complex medical issue to be resolved by medical experts.

[3] There is a federal psychotherapist-patient privilege but Plaintiff has not asserted it throughout the course of this litigation.

[4] "Waiver of the physician-patient privilege for any one physician or condition constitutes a waiver of the privilege as to all physicians or conditions, subject to such limitations as a court may impose pursuant to court rules." RCW 5.60.060.(4)(b).

ORDER

Page - 3

Having put both her mental and physical condition in controversy, Plaintiff has waived her physician-patient privilege to all emotional and psychological records as well as most of her medical records.[5]

**C. Plaintiff Shall Provide Expert Related Records**

Plaintiff next asserts that neither she nor her expert Chief Harrington are required to produce various expert related records sought by Defendant. Defendant argues that Plaintiff refuses to provide previously undisclosed "Case Chronology and Back up Documents for same" that her expert lists as having been reviewed. Plaintiff argues that these records were "not referred to, considered or relied upon in any part of Chief Harrington's report and was inadvertently produced . . . to the expert." [Dkt. #26 at 29].

It is irrelevant whether the documents were inadvertently sent or asserted as privileged or protected work product. All documents, communication and correspondence between Plaintiff and her expert that are deemed to have been considered by the expert, are discoverable.

***1. Plaintiff waived Privilege and Work Product Even if Expert Witness Did Not Rely Upon the Information Provided by Plaintiff in Forming Her Opinions***

Generally, work product and privilege are waived as to information disclosed to an expert witness. The Commentary to the 1993 Amendments to the Federal Rules of Civil Procedure states that there exists a responsibility to "disclose the data and other information considered by the expert and any exhibits or charts that summarize or support the expert's opinions . . .[because] litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions-whether or not ultimately relied upon by the expert-are privileged or otherwise protected from disclosure." Commentary to Fed. R. Civ. P. 26(a)(2)(B), 146 F.R.D. 401, 634.[6]

---

[5] Plaintiff does not place her *entire* physical condition in controversy. As a means of illustration, Plaintiff would not, for example, be deemed to have waived her physician-patient privilege as to medical records involving, a broken leg at the age of five. While the Court doubts the Defendant would request or want such records, Plaintiff is strongly cautioned against withholding any records of Plaintiff's physical condition except those that are patently unrelated to the medical history that Defendant seeks to obtain. Should a genuine question arise as to whether a record is relevant, an *in camera* review by this Court may be requested.

[6] See also *Intermedics, Inc. V. Venitrex, Inc.*, 139 F.R.D. 384, 396 (N.D. Cal. 1991) ("All communications from counsel to a testifying expert that relate to the subjects about which the expert will testify are discoverable, even when those communications otherwise would be deemed opinion work

ORDER

Page - 4

The meaning of "considered" has been interpreted to "encompass . . . all documents and oral communications reviewed by the experts in connection with the formulation of their opinions, but ultimately rejected or not relied upon." *TV-3 Inc. v. Royal Ins. Co. of America*, 193 F.R.D. 490, 492 (S.D. Miss. 2000). Such is the case with "all communications between counsel and a retained testifying expert, even if those communications contain the attorneys' mental impressions or trial strategy or is otherwise protected by the work product privilege." *Id.* at 491.[7] As such, the Court holds that Plaintiff has waived work product and privilege as to records disclosed to Harrington even if Harrington did not rely upon the information.

### *2. Fed. R. Evid. 502 is Not Applicable to Plaintiff's Production of Work Product to Expert Witness*

Plaintiff also contends that Defendant may not compel production of the "Fajardo Chronology" because it was inadvertently produced to Plaintiff's expert, Chief Harrington. The Court need not decide whether the disclosure was inadvertent under Fed. R. Evid. 502 because Plaintiff failed to properly assert work product protection. Rule 26(b)(5)(A)(ii) states in pertinent part: when claiming "that . . . information is privileged or subject to protection . . . the party must . . . describe the nature of the documents, communications, or tangible things not produced or disclosed — and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii).

Plaintiff claims she has properly objected to Defendant's discovery requests based on work product grounds. In support, however, Plaintiff references her Third Supplemental Response to Defendant's First Set of Discovery Requests which only states that "non privileged documents if any would be produced . . . " [Dkt. #33 at 9, Dkt. #34 at 3]. This is not specific enough to properly assert

---

product").

[7] The *TV-3* Court provides a long list of cases from other jurisdictions that have come to the same conclusion: "*Karn v. Rand*, 168 F.R.D. 633, 635 (N.D.Ind.1996) (the expert disclosure requirements of 26(a)(2) " 'trump' any assertion of work product or privilege"); *B.C.F. Oil Refining v. Consol. Edison Co. of N.Y.*, 171 F.R.D. 57 (S.D.N.Y.1997) (holding that all material considered by a testifying expert, including communications from counsel containing attorney work product, must be disclosed); . . . *Musselman v. Phillips*, 176 F.R.D. 194, 202 (D.Md.1997) ("[W]hen an attorney furnishes work product-either factual or containing the attorney's impressions-to [a testifying expert witness], an opposing party is entitled to discovery of such a communication")" *Id.* at 492.

ORDER

work product protection. Moreover, Plaintiff did not respond to Defendant's letter dated April 13, 2009 requesting documents titled "promotions chart and back up" and "case chronology and back up documents for same," which were listed as those considered by Harrington in her report. [Dkt. #26 at 73, Dkt. #25 at 3]. It was only via email on May 15, 2009 that Plaintiff's counsel seems to have actually asserted a specific work product protection to these documents [Dkt. #26 at 31-32]. The Court holds that Plaintiff's failure to specifically and timely object to Defendant's request for Harrington's expert documents waived work product protection.[8]

### *III. CONCLUSION*

Plaintiff is ORDERED to produce all mental and psychological records as well as other relevant records of Plaintiff's physical condition. Plaintiff will also disclose all communications with, and materials provided to, Chief Harrington.

Defendant's motion to compel pursuant to Fed. R. Civ. P. 37 is GRANTED. Responsive documents to the requests for production are due ten days from the date this order is filed. Plaintiffs' request for attorney's fees is DENIED.

**IT IS SO ORDERED.**

Dated this 19th of June, 2009.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

---

[8] Fed. R. Civ. P. 33(b)(4) states that "[t]he grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." The Court declines to excuse Plaintiff's failure. Plaintiff also cannot withhold the "Case Chronology and Back up Documents" by claiming Harrington was beyond the geographic limit Assuming the validity of Defendant's email recounting of the Rule 26 conference on April 28, 2009, Plaintiff expressly agreed that Chief Harrington would provide materials requested by Defendant's subpoena duces tecum. [Dkt. #26 at 79].

ORDER